| BYRNES, Judge.
As set forth in Burk v. Gibbens, 620 So.2d 478 (La.App. 4 Cir.1993) this case concerns a dispute among descendants of Rezin Bowie. In Burk v. Gibbens this Court maintained Nora Redmann’s exception of lack of jurisdiction to claims asserted by Burk as the Administrator of the Succession of Gwendolyn Moore.
Subsequent to the rendering of our opinion in Burk, Robert Landry replaced William Gibbens as executor of the Succession of Muriel Yernet Moore. Landry is also the administrator of the succession of Muriel Moore’s father, John Seyborne Moore. Landry, acting in his representative capacity of both successions brought this claim against William and May Gibbens and their daughter, Nora Redmann who were the defendants in the Burk case. Landry asserted basically the same claims to Jim Bowie heirlooms in this case as were asserted in Burk, with the addition of claims to recover funds allegedly belonging to . the late Muriel Moore. Nora Redmann, a California resident, excepted to the jurisdiction of the court just as she had done successfully in Burk. Prior to the trial of her exception to the jurisdiction, Redmann filed an exception of prescription. The trial court ^maintained Redmann’s exception of lack of jurisdiction and dismissed Landry’s claims against her with prejudice. Landry appeals. We affirm.
I. Appellee, Nora Redmann, did not waive her exception of lack of jurisdiction when she subsequently filed an exception of prescription.
Landry contends that when Nora Red-mann filed an exception of prescription it constituted a general appearance and consequently a waiver of her previously filed decli-natory exception of lack of personal jurisdiction. Landry relies on Foster v. Breaux, 263 La. 1112, 270 So.2d 526, 529 (1972) and sever *1178 al Supreme Court and Fourth Circuit cases following Foster. However, we note that all of those cases ante-date both Bickham v. Sub Sea International, 617 So.2d 483 (La.1993) and Delay v. Charbonnet, 627 So.2d 720 (La.App. 4 Cir.1993).
In Bickham the Supreme Court held that the subsequent filing of interrogatories and requests for production of documents did not waive a previously filed exception of improper venue. Landry argues that Bickham “does not cite a single law or case to support the opinion.” It is nonetheless the opinion of our Supreme Court and it was followed by this Court in the Delay case.
Landry argues that Bickham does not apply to subsequently filed peremptory exceptions (such as Nora Redmann’s exception of prescription in this case) which should constitute a waiver of previously filed decli-natory exceptions (such as Nora Redmann’s exception of lack of personal jurisdiction). However, in Delay this Court ruled that a subsequently filed peremptory exception of res judicata did not waive a previously filed declinatory exception to personal jurisdiction. Following Delay, Nora Redmann’s filing of a peremptory exception subsequent to her filing | gsubsequent to her filing of her exception to the personal jurisdiction of the court did not constitute a waiver of her exception to the jurisdiction.
II. Nora Redmann did not submit to the jurisdiction of Louisiana courts when she advertised the sale of copies of Jim Bowie’s portrait in national magazines.
Landry contends that Nora Redmann is subject to the personal jurisdiction of this state because she advertised the sale of the portrait of Jim Bowie in three magazines. Landry’s attorney acknowledged in oral argument that Redmann had sold no copies of the portrait in Louisiana. Landry does not dispute the fact that they are magazines with a national, though perhaps specialized, readership. He argues that because they are only available by mail and not on the newsstand that they should not be treated like national magazines for jurisdictional purposes. This is a distinction without a difference. Redmann’s advertisements in these magazines do not subject her to the personal jurisdiction in the state of Louisiana. J. Wilton Jones Co., Inc. v. Touche Ross and Co., 556 So.2d 67 (La.App. 4 Cir.1989). In Jones this Court relied on Charia v. Cigarette Racing Team, Inc., 583 F.2d 184 (5 Cir.1978) which held that advertising in a national boating magazine (a specialized readership) was not a “significant contact for jurisdictional purposes.” Jones, 556 So.2d at 70.
III. Nora Redmann did not have an interest in a real right in Louisiana.
Landry contends that Louisiana has jurisdiction over Nora Redmann because she has an ownership interest in a mortgage on Louisiana real property which is a real right in Louisiana. LSA-R.S. 13:3201(A)(5). Red-mann counters that Comment (e) under this statute indicates that the real rights referred to in that ^statute were limited to mineral rights as set forth in LSA-C.C. art. 3664.[1] If it had been the intention of the legislature to limit the real rights referred to in LSA-R.S. 13:3201(A)(5) to only those referred to LSA-C.C. art. 3364, it failed to do so. The clear and unambiguous language of LSA-R.S. 13:3201(A)(5) places no limitation on the term “real rights” either explicitly or implicitly. When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. LSA-R.S. 1:4. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. If the legislature erred in expressing its intention, it is not the function of the judicial branch to correct such an error, unless the error creates an ambiguity. Such an error (if one occurred) should be corrected by the legislature. River Marine Contractors, Inc. v. Board of Com’rs for St. Bernard Port, Har *1179 bor and Terminal Dist., 605 So.2d 654 (La.App. 4 Cir.1992) writ den. 607 So.2d 568 (La.1992). There is no basis for adopting Redmann’s very narrow definition of real rights as that term is used in LSA-R.S. 13:3201(A)(5). The language is broad enough to include a mortgage interest.
But Redmann argues that she has no interest in a mortgage on Louisiana real property. The record contains Nora Redmann’s affidavit stating in pertinent part:
“Similarly, my parents designated me as a co-payee on the Johnson & Theriot mortgage at their own initiative and so that the mortgage would be in my name if and when they predeceased me. My parents were in them seventies when the mortgage was made, and given the fifteen year 15payout period, felt it prudent to have me named as one of two mortgagees. As best I can recall, I did not even learn that I was named as a co-mortgagee until sometime afterwards (I do not recall the exact date that I first learned of the existence of the mortgage), as I did not even personally sign the mortgage instrument. Nor have I realized any income from the mortgage, as the revenue derived from the same has been deposited into my parents’ bank accounts, including the mortgage payment checks that have been made payable to me. This is appropriate from my perspective, as none of the money advanced to the mortgage debtors was mine and I do not consider myself entitled to the revenues therefrom while my parents are living.”
These assertions from Redmann’s affidavit are consistent with the documents contained in the record. The mortgage in question is entitled: “Mortgage by F. Joseph Theriot and Joseph E. Johnson in favor of Nora Gibbens, wife oft and Jerome J. Red-mann.” Nora Redmann’s name does not appear in the title. The signature lines show that Nora Redmann’s name was signed not by her, but by her mother. The copies of the Theriot and Johnson checks made payable to Nora Redmann show that they were marked “For Deposit Nora G. Redmann” in a handwriting very different in appearance from Nora Redmann’s signature as it appears on other documents in the record. This is consistent with the proposition that the checks were deposited by her parents in an account that bore Nora Redmann’s name as an additional aceountholder for convenience purposes. You do not necessarily have to have an ownership interest in an account to have your name on it. .The checks show that they were deposited in a State Investors Savings & Loan Assn, account, which is not where one would normally expect a California resident like Nora Redmann to do her banking on a recurring basis; but the use of this local Savings and Loan is consistent with the proposition that the funds belonged to her parents who are local residents.
| eThe record contains no contrary evidence. Landry states in his Motion to Designate Appeal Record that “there was no testimony presented at any of the hearings.” Landry does not assign the failure to take testimony as error. Landry does not allege that it was error for the trial court to accept the affidavit of Nora Redmann or any of the other documents in the record. Landry does not allege that there was any testimony or other evidence bearing on this question that he was prevented from putting in the record by an adverse ruling of the trial court. Basically, Landry has not objected to anything being in the record, just the result reached by the trial court based on that record. There are no written reasons for judgment in the record. We must assume that the trial court was persuaded by Nora Redmann’s affidavit and other documents that she had no real right in Louisiana. Based on the record, this Court cannot say that such a finding is erroneous.
IV. Nora Redmann’s plea of res judica-ta.
Redmann contends that Landry’s right to contest the issue of jurisdiction is barred by res judicata based on the judgment of this Court in Burk v. Gibbens, supra. Redmann also argues that a second attempt to obtain jurisdiction over Redmann was made on February 24, 1994, when the trial court was asked to reconsider the jurisdictional question based on alleged new evidence showing that Redmann was involved in financial transactions in Louisiana. Redmann’s brief states that this second attempt at jurisdiction *1180 was denied by the trial court on March 25, 1994 allegedly because the trial court found that there was no reason why the proponent of jurisdiction could not have raised the same allegations prior to Redmann’s dismissal from the lawsuit by the judgment rendered in Burk, supra. |7We find nothing in the appellate record relating to that second attempt to obtain jurisdiction.
Redmann asserts that these proceedings represent a third attempt to obtain jurisdiction over her, and as such should be rejected outright on the basis of res judicata.
Landry counters that Burk v. Gibbens did not involve identical parties. Therefore, res judicata does not apply. Landry further argues that Redmann filed an exception of res judicata with the trial court which was denied. Landry asserts that Redmann failed to appeal the denial of her exception of res judicata; that it is too late to raise the exception on this appeal; and that the exception of res judicata is not one that this Court can supply on its own motion. LSA-C.C.P. art. 927.
There is a copy of an exception of res judicata urged by Redmann in the record, but there is no documentation of the disposition of that exception.
Regardless, because this Court has already found above that there was no error in the trial court’s judgment in favor of Redmann, there is no necessity for this Court to decide the issue of res judicata.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs assessed to the appellant.

AFFIRMED.

. This comment refers to LSA-C.C. art. 3664 as it existed at the time the comment was written. There is no Civil Code article 3664 today.